**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JOHN CAPRIOLE, individually and on behalf of all others similarly situated,** ) | |
| ) | **CASE NO.  1:19-cv-11941-IT** |
| ) | |
| **PLAINTIFF,** ) | |
| v. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| **UBER TECHNOLOGIES, INC., and DARA** ) | |
| **KHOSROWSHAHI,** ) | |
| **DEFENDANTS.** | |

**AMICUS CURIAE BRIEF OF THE MASSACHUSETTS ATTORNEY GENERAL**
**IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR**
**PFRELIMINARY INJUNCTIVE RELIEF**

**I.      INTRODUCTION AND INTEREST OF AMICUS CURIAE**

Ride-sharing drivers are providing essential transportation services in the midst of

a public health crisis, but they do so without necessary sick leave protections–leaving

them in an untenable economic position that puts them at risk of endangering not only

themselves and their families but the entire public.  Paid sick leave would promote the

public interest by helping to protect ride-sharing drivers and the public at large from

exposure to COVID-19, a highly contagious infectious disease.  The Attorney General

respectfully submits this *amicus curiae* brief in support of Plaintiff, to urge this Court to

find there is an immediate threat of irreparable harm not only to drivers but to the public

at large when drivers must work even when it may be unsafe for them to do so.

The Attorney General has a substantial interest in protecting all workers from

exploitative business and labor practices.  But because the Attorney General's resources

are limited, the Attorney General recognizes that individuals must often play a

1

meaningful role in vindicating their own rights and ensuring compliance within the business community–not only to protect themselves, but also to expand compliance across entire industries.[1]

Independent contractor misclassification remains a persistent economic problem throughout the country.  *See* Leberstein and Ruckelshaus, National Employment Law Project, *Independent Contractor vs. Employee:  Why independent contractor misclassification matters and what we can do to stop it* (May 2016), https://s27147.pcdn.co/wp-content/uploads/Policy-Brief-Independent-Contractor-vs-Employee.pdf.  And misclassification remains particularly prevalent throughout the transportation sector, including for those based here in Massachusetts. *See*, *e.g.*, *Anderson v. Homedeliveryamerica.com, Inc.*, 2013 WL 6860745 (D. Mass. Dec. 30, 2013); *Martins v. 3PD, Inc.*, 2013 WL 1320454 (D. Mass. Mar. 28, 2013); *Amero v. Townsend Oil*, 2008 WL 5609064 (Mass. Super. Ct. Dec. 3, 2008).[2] One of the ways many companies attempt to prevent workers from pursuing otherwise available legal remedies is by imposing forced arbitration agreements,[3] often with unreasonable forum selection clauses.[4]  As workers are increasingly made to submit their

---

[1]The Legislature has granted workers a right under M.G.L. c. 149, § 150 to bring suit to enforce protections under the Massachusetts Earned Sick Time Law (M.G.L. c. 149, § 148C), as well as the Independent Contractor Misclassification Statute (M.G.L. c. 149, § 148B), both at issue here.

[2]*See also Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981 (9th Cir. 2014); *Valadez v. CSX Intermodal Terminals, Inc.*, 2017 WL 1416883 (N.D. Cal. April 10, 2017); *Taylor v. Shippers Transp. Express, Inc.*, 2014 WL 7499046 (C.D. Cal. Sept. 30, 2014); *Dynamex Operations W., Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018).

[3]*See Independent Contractor vs. Employee:  Why independent contractor misclassification matters and what we can do to stop it*, *supra*.

[4]*See, e.g.*, *Montoya v. CRST Expedited, Inc.,* 2018 WL 627372 (D. Mass. Jan. 30, 2018) (striking forum selection clause to require Massachusetts truck driver to litigate his class action

disputes to arbitration, overall claim volume has significantly decreased and the few

claims that are brought are removed from public view.[5]  This circumstance hampers the

effectiveness of private enforcement efforts.  Accordingly, the Attorney General has a

substantial interest in ensuring that all workers–who are not subject to compulsory

arbitration–have the ability to pursue their claims in court.

     In a victory for workers, the United States Supreme Court unanimously held in

in *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019) that both employees <u>and</u>

independent contractors fall within the transportation worker exemption in the Federal

Arbitration Act (FAA), 9 U.S.C. § 1, the law that ordinarily compels parties

to submit their claims to arbitration.[6]  This decision not only makes the transportation

worker exemption applicable to those labeled as independent contractors–whether they

are properly classified or not–but also guarantees that judges rather than arbitrators

decide whether the exemption applies to particular workers in the first place.  Following

*New Prime*, some delivery drivers have succeeded in defeating forced arbitration

---

claim for unpaid wages in Iowa); *Chebotnikov v. LimoLink, Inc.*, 150 F. Supp. 3d 128 (D. Mass. 2015) (denying company's motion to dismiss misclassification-wage action on venue grounds, where Massachusetts chauffeurs' independent contractor arbitration agreements specified Iowa as forum).  Often drivers are not even signatories to such agreements.  *See*, *e.g.*, *Ouadani v. TF Final Mile, LLC,* 876 F.3d 31 (1st Cir. 2017) (arbitration clause unenforceable in class action, where drivers, paid through a subcontractor, were not actually parties to, or even aware of, arbitration agreement between subcontractor and putative employer); *Espinal v. Bob's Discount Furniture, LLC*, 2018 WL 2278106 (D.N.J. May 18, 2018) (same); *Hayes v. XPO Last Mile, Inc.*, 2017 WL 4900387 (W.D. Mich. Aug. 21, 2017) (denying motion to compel individual arbitration where drivers were non-signatories).

   [5]*See* Alexander Colvin, Economic Policy Institute, *The Growing Use of Mandatory Arbitration*, at 11-12 (April 6, 2018), https://www.epi.org/files/pdf/144131.pdf.

   [6]The Massachusetts Attorney General, in coordination with 14 other State Attorneys General, submitted an amicus brief in support of Oliveira, https://www.supremecourt.gov/DocketPDF/17/17-340/55416/20180725123321131_17-340%20Amici%20Brief%20Massachusetts.pdf.

agreements on this basis.  *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335 (D. Mass.

Aug. 20, 2019), *appeal pending* (1st Cir. Docket 19-1848); *Ritmann v. Amazon.com, Inc.*,

383 F. Supp. 3d 1196 (W.D. Wash. April 23, 2019), *appeal pending* (9th Cir. Dkt 19-

35381).  And in the context of ride-sharing, Uber drivers convinced a federal appeals

court against ordering arbitration in a misclassification suit, based on the court's

conclusion that drivers *either* delivering goods *or* transporting passengers qualify for the

FAA exemption, when involved in interstate commerce.  *Singh v. Uber Tech., Inc.*, 939

F. 3d 210, 219-28 (3rd Cir. 2019) (now on remand to determine whether drivers are

engaged in interstate commerce).  But, even "[w]hile trends indicate that companies

intend to continue to move away from standard employer-employee arrangements, the

legal landscape for on-demand workers is far from resolved."  Nancy Cremins, *The On-

Demand Economy Continues to Grow, but Legal Consequences Abound for Employers

and Employees in the U.S. and Abroad*, 62-WTR Bost. B.J. 26 (Feb. 2, 2018),

https://bostonbarjournal.com/2018/02/02/the-on-demand-economy-continues-to-grow-

but-legal-consequences-abound-for-employers-and-employees-in-the-u-s-and-abroad/.

And now, while their legal status is still being determined, ride-sharing drivers,

and the public they serve, face immediate threat of irreparable harm due to the current

global health crisis (ECF No. 42).  After the World Health Organization designated the

2019 novel coronavirus (COVID-19) a public health emergency of international concern,

https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-

the-international-health-regulations-(2005)-emergency-committee-regarding-the-

outbreak-of-novel-coronavirus-(2019-ncov., Massachusetts Governor Charles D. Baker

declared a state of emergency, pursuant to St. 1950, c. 639 and M.G.L. c. 17, § 2A.[7]  And

as the number of cases in Massachusetts continues to rise, Governor Baker issued

COVID-19 Executive Order No. 13 (Mar. 23, 2020), https://www.mass.gov/doc/march-

23-2020-essential-services-and-revised-gatherings-order/download, to "limit the spread

of this highly contagious and potentially deadly virus" and to assure the continued

operation of essential business services in the Commonwealth.  Consistent with the

Federal Cybersecurity and Infrastructure Security Agency guidance to States to identify

critical infrastructure sectors, Executive Order No. 13 lists the services deemed essential

and exempt from the temporary business closing Order.  *Id*. at 1-2 & Exhibit A at p. 5,

https://www.mass.gov/doc/covid-19-essential-services/download.  Services provided by

Transportation Network Company drivers, like those provided by Plaintiff here, are

among those "essential services" that are needed to keep society functioning during this

pandemic.  Exhibit A at p. 5.  Yet, ride-sharing drivers who provide these essential

services do not have basic protections and benefits including, at issue here, paid sick

leave–because they are treated as independent contractors.

Paid sick leave necessarily serves a fundamental "public purpose" in advancing

public health by enabling sick (and especially low wage) workers to stay home and not

spread their illness to others.  In order to help stem the spread of COVID-19, drivers must

be afforded immediate sick leave protections so that they are not confronted with the

economic dilemma of having to work while they are sick, and so that members of the

public are protected from the risks posed by sick drivers.  Accordingly, this Court should

---

[7]*See* Executive Order No. 591:  Declaration of a State of Emergency to Respond to COVID-19 (Mar. 10, 2020), https://www.mass.gov/executive-orders/no-591-declaration-of-a-state-of-emergency-to-respond-to-covid-19.

find that there is more than sufficient evidence of an immediate threat of irreparable

harm, not only to the drivers themselves and their families but also to members of the

public at large.

## II.  ARGUMENT

### A.  Overview of the Statutory Scheme

M.G.L. c. 149, § 148B establishes the standard to determine whether individuals

performing services for another shall be deemed employees or independent contractors

for purposes of Massachusetts wage law, including the ESTL.[8]  *See* the Attorney

General's Independent Contractor Advisory (2008/1),

https://www.mass.gov/doc/attorney-generals-advisory-on-the-independent-contractor-

law/download.  The "purpose behind the independent contractor statute is to protect

employees from being deprived of the benefits enjoyed by employees through their

misclassification as independent contractors."  *Somers v. Converged Access, Inc.*, 545

Mass. 454, 592 (2009).  Yet workers who may meet the statutory employment status test

but are misclassified as independent contractors by their employer are "improperly

denied access to earned sick time and other benefits."  Massachusetts Attorney General's

*Earned Sick Time in Massachusetts, FAQs* (Sept. 21, 2018) at p. 3,

https://www.mass.gov/doc/earned-sick-time-faqs/download.

---

[8]Under Section 148B(a), individuals are deemed to be employees unless the employer
satisfies its burden of proving by a preponderance of the evidence that:

"(1) the individual is free from control and direction in connection with the performance
of the service, both under his contract for the performance of service and in fact; and
(2) the service is performed outside the usual course of the business of the employer; and
(3) the individual is customarily engaged in an independently established trade, occupation,
profession or business of the same nature as that involved in the service performed."

*Somers v. Converged Access, Inc.*, 454 Mass. 454, 589 (2009) (citing Section 148B).

In 2014, Massachusetts voters overwhelmingly approved by referendum a measure that mandates sick pay for workers.  M.G.L. c. 149, § 148C (added by St. 2014, c. 505, § 1 (eff. July 1, 2015)); *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 322 (1st Cir. 2016).  Under the Massachusetts Earned Sick Time Law (ESTL), employers with 11 or more workers must provide paid leave to employees during absences from work in order to allow employees to care for themselves and their family members, without fear of reprisal.  Section 148C(b), (c), (d)(4), (h), (i).  Among other things, employees can use earned sick leave to address a condition that requires home care, professional medical diagnosis or care, and preventative medical care for themselves as well as for their family members.[9]  Section 148C(c).  *See also* Massachusetts Attorney General's *Earned Sick Time in Massachusetts, FAQs* (Sept. 21, 2018) at p. 8, https://www.mass.gov/doc/earned-sick-time-faqs/download.  The ESTL applies whether a worker is employed on a full time, part-time, seasonal, or temporary basis.  940 C.M.R. § 33.02.[10]  And when an employee simultaneously works for more than one employer, the law requires that each employer must provide sick leave benefits.

---

[9]The Massachusetts Legislature also subsequently enacted the Paid Family and Medical Leave Law (PFML) that provides, among other things, up to 26 weeks of paid leave for workers to take care of themselves or sick family members, including 1099 workers.  St. 2018, c. 121. *See* the Department of Family and Medical Leave's *Paid Family and Medical Leave (PFML) fact sheet*, https://www.mass.gov/info-details/paid-family-and-medical-leave-pfml-fact-sheet. Unfortunately, however, the PFML only takes partial effect on January 1, 2021, and will not take full effect until July 1, 2021.

[10]The ESTL defines an "employee" as "any person who performs services for an employer for wage, remuneration, or other compensation…" and an "employer" as "any individual, corporation, partnership or other private or public entity, including any agent thereof, who engages the services of an employee for wages, remuneration or other compensation…".  Section 148C(a).  By regulation, an "employee" is further defined as "[a]ny person who performs services for an employer for wage, remuneration, or other compensation, as further defined by M.G.L. c. 149, § 148B, including full time, part-time, seasonal, and temporary employees…".  940 C.M.R. § 33.02.

*Earned Sick Time FAQs* at p. 5.  Employees "must be paid what they would have earned

if they had worked instead of using earned sick time."  *Id*. at p. 9.[11]  *See also* Section

148C(a). The Attorney General is encouraging employers to allow employees liberal

access to all forms of employee paid leave to facilitate compliance with governmental

public health recommendations.  *See* the Attorney General's *Frequently Asked Questions*

*About COVID-19: Employee Rights and Employer Obligations, Guidance for Employers*

*and Employees During the Coronavirus Public Health Emergency*,

https://www.mass.gov/service-details/frequently-asked-questions-about-covid-19-

employee-rights-and-employer-obligations.

## B.    Drivers, and the public they serve, face a significant potential for irreparable harm in the absence immediate injunctive relief.

Generally a party who seeks a preliminary injunction must show: (1) a likelihood

of success on the merits; (2) the potential for irreparable harm if the motion is denied; (3)

that the issuance of the injunction will not impose more of a burden on the non-moving

party than the burden that its absence will cause to the movant; and (4) the effect, if any,

of the court's ruling on the public interest.  *Charlesbank Equity Fund II v. Blinds To Go,*

*Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (citing *Ross–Simons of Warwick, Inc. v. Baccarat,*

*Inc.,* 102 F.3d 12, 15 (1st Cir. 1996)).  In applying this standard, trial courts have wide

---

[11]The federal Families First Coronavirus Response Act (FFCRA), applicable to most employers with fewer than 500 employees, will take effect April 2, 2020.  FFCRA, Pub. L. 116-127 (Mar. 18, 2020).  The Act, to be administered by the United States Department of Labor, provides expanded family and medical leave for specified reasons related to COVID-19, but does not apply to workers classified as independent contractors.  *See* U.S. DOL's website, *Families First Coronavirus Response Act: Employee Paid Leave Rights*, https://www.dol.gov/agencies/whd/pandemic/ffcra-employee-paid-leave.

discretion to decide whether to grant injunctive relief.  *Id*. at 162 (citing *Ross–Simons of Warwick, Inc.*, 102 F.3d at 16).

Plaintiff now moves for injunctive relief on his Amended Complaint (ECF No. 40) that alleges, *inter alia*, a violation of the ESTL arising from misclassification under Section 148B.  As this Court has noted, notwithstanding Defendants' motion to compel arbitration, this Court "still retains the power to grant interim relief, if otherwise justified, for the interval needed to resort to the arbitrator."  ECF No. 41, at 2 (citing *Next Step Med. Co. v. Johnson & Johnson Int'l.*, 619 F.3d 67, 70 (1st Cir. 2010)).  And secondarily, the Court must decide whether an order to compel arbitration is precluded where the relief Plaintiff seeks is in the nature of a "public injunction."  ECF No. 41, at 2.

Irreparable harm is typically found when there is no adequate remedy at law.[12] *Charlesbank Equity Fund II*, 370 F.3d at 162.  Plaintiff argues that he satisfies the irreparable harm prong of the test because the relief sought here is not solely for his benefit or the benefit of other Uber drivers, but for the public at large (ECF No. 42, at 3-4, 15).  This Court has explained that the threshold issue here "is not whether [the] statutory scheme allowing plaintiffs to sue for public injunctive relief may be thwarted by arbitration provisions, but whether the statutory scheme at issue here allows for a public injunction."  ECF No. 41, at 5.  The Attorney General respectfully requests that this Court find that such "public injunctive relief" is available.

---

[12]To determine whether Plaintiff demonstrated irreparable harm this Court previously presumed, without deciding, that Plaintiff has a likelihood of success of the merits (ECF No. 41, at 3).  But in denying Plaintiff's original motion for injunctive relief (ECF No. 4), this Court ruled that because the recently Amended Complaint (ECF No. 40), adding a claim alleging violation of the ESTL, was filed well after briefing on that motion was completed, the Court did not address Plaintiff's recent allegations of harm posed by the COVID-19 pandemic.  ECF No. 41 at 2 & n.3.

"Public injunctive relief" arising from a statutory remedy is recognized as

"'injunctive relief that has the primary purpose and effect of prohibiting unlawful acts

that threaten future injury to the general public.'" ECF No. 41, at 4 (citing *McGill v.*

*Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017)).[13]  Where such public injunctive relief is

available, "a plaintiff cannot waive the statutory right to seek such relief in court by

signing an arbitration agreement." *Id*. (citing *McGill*, 2 Cal. 5th at 961-63).[14]  *Cf. Colopy*

*v. Uber Techs., Inc.*, 2019 WL 6841218, at *2 (N.D. Cal. Dec. 16, 2019) (denying

injunctive relief to drivers alleging employment misclassification, based on conclusion

that an order for immediate recovery for regular wage payments for themselves would

not serve as a "public injunction," as harm to the public was too attenuated), *renewed*

*motion for injunctive relief pending* (based on COVID-19 pandemic); *Magana v.*

*DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018) (same), *appeal pending* Case

No. 18-17232 (9th Cir.) (on hold pending potential class action settlement).

Here, the risk of harm to Uber's drivers and to the general public is readily

apparent. ECF No. 42, at 3-4, 15.  The Centers for Disease Control and Prevention (CDC)

recommends that people stay home when they are sick to prevent the spread of COVID-

---

[13]The applicable consumer protection statute at issue in *McGill*–the Consumers Legal Remedies Act (CLRA)–authorizes a consumer damaged by an unlawful method, act, or practice to bring an action for various forms of relief, including "[a]n order enjoining the methods, acts, or practices" (Cal. Civ. Code, § 1780(a)(2)), and provides that "[a]ny waiver by a consumer" of the CLRA's provisions "is contrary to public policy and shall be unenforceable and void." (*Id.*, § 1751.)  For violation of the ESTL, Section 150, par. 2 provides that an individual may "institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred…and other benefits"; Section 148B(e) of the Misclassification Statute provides that in addition to the Attorney General's civil and criminal enforcement authority "[n]othing [herein] shall limit the availability of other remedies at law or in equity".

[14] Conversely, as described in *McGill*, "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." 2 Cal.5th at 955.

19.  CDC, *What To Do if You Are Sick*, https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html.  But for workers who are not entitled to paid sick leave, that admonition is far easier said than done.  *See, e.g.*, Elise Gold and Jessica Schieder, Economic Policy Institute, *Work Sick or Lose Pay?* (June 28, 2017), https://www.epi.org/files/pdf/130245.pdf.  Indeed, the medical community has long understood that workers without paid sick leave are less likely to take time off when they are sick.  *See*, *e.g.*, National Institutes of Health, *Workers Without Paid Sick Leave Less Likely To Take Time Off For Illness Or Injury Compared To Those With Paid Sick Leave* (Mar. 2016), https://www.ncbi.nlm.nih.gov/pubmed/26953308.

Thus, drivers now face the untenable position of choosing to continue providing transportation services to members of the public while they, or their household family members, are in compromised medical conditions or risk losing all means of financial self-support.  And the public will bear the risks resulting from the decisions of some drivers, based on their needs to support themselves and their families, to drive despite suffering symptoms of COVID-19, further spreading infection in our communities.  Accordingly, because Plaintiff has established a sufficient showing of immediate threat of injury to the general public irreparable harm, and where the statutory scheme allows for issuance of "public injunctive" relief in such circumstances, Plaintiff's motion should be granted.

## III.    CONCLUSION

For the foregoing reasons, the Attorney General urges this Court to grant Plaintiff's emergency motion for public injunctive relief under the Massachusetts Earned Sick Time Law.

Respectfully submitted,
FOR THE COMMONWEALTH,

MAURA HEALEY
ATTORNEY GENERAL


/s/ Karla E. Zarbo
Karla E. Zarbo (BBO # 629157)
Assistant Attorney General
Fair Labor Division
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
karla.zarbo@mass.gov

March xx, 2020

## CERTIFICATE OF SERVICE

I, Karla E. Zarbo, hereby certify that I have this day delivered a copy of the within document through the CM/ECF system to counsel of record.

Signed under the pains and penalties of perjury on March xx, 2020.

_____
/s/ Karla E. Zarbo

12