UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN CAPRIOLE, individually and on behalf of all others similarly situated, | * * * * |
| Plaintiff, | * * |
| v. | Civil Action No. 1:19-cv-11941-IT * * |
| UBER TECHNOLOGIES, INC., and DARA KHOSROWSHAHI, | * * * |
| Defendants. | * |

MEMORANDUM AND ORDER

March 31, 2020

TALWANI, D.J.

Plaintiff John Capriole brings this action, on his own behalf and on behalf of drivers who have worked in Massachusetts for Defendant Uber Technologies, Inc. (Uber), based on Uber's alleged misclassification of drivers as independent contractors.[1] For the reasons that follow, Defendants' Motion to Transfer Venue [#12] to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) and a forum selection clause is ALLOWED, and Defendants' Emergency Motion for a Stay of All Proceedings Pending Resolution of their Motion to Transfer [#53] is DENIED as moot. The court defers ruling on Plaintiff's Emergency Motion for a Preliminary Injunction [#42] and Plaintiff's Motion for Leave to File Second Amended Complaint [#43].

---

[1] Plaintiff also names Defendant Dara Khosrowshahi, as President and Chief Executive Officer of Uber.

I.  Procedural History

Plaintiff filed this putative class action, on his own behalf and on behalf of similarly situated Uber drivers in Massachusetts, under the Massachusetts Wage Act, M.G.L. c. 149, §§ 148, 148B, and M.G.L. c. 151, §§ 1, 1A, and the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., alleging misclassification and non-payment of minimum wage and overtime.[2]

Defendants responded with a Motion to Compel Arbitration and to Stay Proceedings [#10] and a Motion to Transfer Venue [#12]. Defs.' Mot. to Transfer Venue 9, n.2 [#12].

While these motions were pending, Capriole amended his complaint in light of the ongoing COVID-19 pandemic to add a claim alleging violations of the Massachusetts Earned Sick Time Law, M.G.L. c. 149, § 148C. Am. Compl. [#40]. Plaintiff also filed an Emergency Motion for a Preliminary Injunction [#42] based on the sick leave claim[3] and a Motion for Leave to File Second Amended Complaint [#43] to add additional plaintiffs.[4]

Defendants subsequently filed a Notice [#47] withdrawing their Motion to Compel Arbitration and to Stay Proceedings [#10] on the ground that it was moot because the Amended Complaint [#40] superseded the Complaint [#1] to which it was directed.[5] Defendants also filed

---

[2] Capriole also filed a motion for a preliminary "public injunction." Pl's Mot. for Injunctive Relief [#4]. The motion was briefed before the current COVID-19 pandemic and does not address allegations of individual or class-wide harm posed by the pandemic. Plaintiff has filed a Notice of Appeal [#51] of the Memorandum and Order [#41] denying this motion.
[3] Plaintiff's counsel's Local Rule 7.1(a) certification states that Defendants oppose the relief requested. [#42]. The court has ordered Defendants to file their response by April 3, 2020, and has granted their emergency request to file an oversized brief. Elec. Orders [#49], [#55].
[4] Plaintiff's counsel's Local Rule 7.1(a) certification states that Defendants oppose the relief requested. Pl's Mot. for Leave to File Second Am. Compl. 5 [#43]. Defendants have not yet filed their opposition to this motion.
[5] Defendants state further that they intend to file a new motion to compel arbitration of Plaintiff's claims in the First Amended Complaint. Notice ¶ 3 [#47].

their <u>Emergency Motion for a Stay of All Proceedings Pending Resolution of their Motion to Transfer</u> [#53].[6]

II.     Background

Uber is a ridesharing company that uses a smartphone application ("Uber App" or "App") to allow customers to hail rides. Boggs Decl. ¶ 5 [#13]. To become an Uber driver, an individual must download the App and agree to Uber's Technology Services Agreement ("Agreement") with Raiser, LLC, a subsidiary of Uber. Boggs Am. Decl. ¶ 3 [#33-1].

In 2016, when drivers first opened the App, they were presented with the following screen:



Id. at ¶ 6; Ex. 2 – Screenshot (Boggs Am. Decl.) [#33-1].

---

[6] Defendants' counsel's Local Rule 7.1(a) certification states that Plaintiff opposes the relief requested. Defs' Emergency Mot. to Stay Proceedings 12 [#53]. Plaintiff has not yet filed his oppositions to this motion.

At the top, the screen read "TO GO ONLINE, YOU MUST REVIEW ALL THE DOCUMENTS BELOW AND AGREE TO THE CONTRACTS BELOW." Boggs Am. Decl. ¶ 6 [#33-1]. Drivers had the option of clicking on two links in black typeface, either the "RAISER Technology Services Agreement December 10 2015" or the "Service Fee Addendum." Id. At the bottom of the page, a large blue button was presented to drivers with white typeface stating, "YES I AGREE." Id.; Ex. 2 – Screenshot (Boggs Am. Decl.) [#33-1]. In smaller letters above the blue button, the screen read "[b]y clicking below, you represent that you have reviewed all the documents above and that you agree to all the contracts above." Id.

After a driver clicked the "Yes I Agree" button, a new box popped up in the middle of the screen, which read "PLEASE CONFIRM THAT YOU HAVE REVIEWED ALL THE DOCUMENTS AND AGREE TO ALL THE NEW CONTRACTS." Id. ¶ 7; Ex. 3 – Screenshot (Boggs Am. Decl.) [#33-1]. Drivers at this point had the option of clicking "No" or "Yes I Agree." Id.

If a driver clicked the "RAISER Technology Services Agreement December 10 2015" link, the Agreement opened. Ex. 1 at 1 (Boggs Am. Decl.) [#33-1].[7] At the beginning of the Agreement, the document stated:

> IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS . . . THROUGH FINAL AND BINDING ARBITRATION, UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION.

---

[7] The Agreement attached as Ex. 1 is dated December 11, 2015. It was the only Agreement presented to drivers between December 11, 2015 and November 2019. Boggs Am. Decl. ¶ 3 [#33-1].

Ex. 1 at 1 (Boggs Am. Decl.) [#33-1].[8]

Section 15.1 of the Agreement included a forum selection clause and a choice of law provision, stating:

> The choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.3, such arbitration clause being governed by the Federal Arbitration Act. Accordingly, and except as otherwise stated in Section 15.3, the interpretation of this agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction. Any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services that are not subject to the arbitration clause contained in Section 15.3 shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California.

Id. at § 15.1 [#33-1].

The Agreement also contained an arbitration provision, which stated, in relevant part:

> This Arbitration Provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis, except as provided below, pursuant to the terms of the agreement unless you choose to opt out of the Arbitration Provision.
> . . .
>
> (i) This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement . . .
>
> **Except as it otherwise provides, the Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration . . . Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

---

[8] "Uber Services" is defined in the Agreement as "Uber's on-demand lead generation and related services licensed by Uber . . . that enable transportation providers to seek, receive and fulfill on-demand requests for transportation services by Users seeking transportation services; such Uber Services include access to the Driver App and Uber's software, websites, payment services . . . and related support service systems." Id. at § 1.13 [#33-1].

Id. at § 15.3 (emphasis in the original) [#33-1].

The Agreement also contained a delegation clause, stating:

Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

Id. at § 15.3(i) [#33-1].

The Agreement also included a class action waiver, which read:

**You and the Company agree to resolve any dispute that is in arbitration on an individual basis only, and not on a class, collective action, or representative basis ("Class Action Waiver"). The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis. The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on a class, collective, or representative basis.** Notwithstanding any other provision of this Agreement, the Arbitration Provision or the JAMS Streamlined Arbitration Rules & Procedures, disputes regarding the enforceability, revocability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, or representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver [is] unenforceable, the class, collective, and/or representative action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

Id. at § 15.3(v) (Boggs Am. Decl.) [#33-1].

Capriole began working as an UberX[9] driver in March or April 2016. Capriole Decl. ¶ 4 [#16-8]; Boggs Decl. ¶ 16 [#13]. Capriole clicked "Yes, I Agree" on Uber's Agreement on March 27, 2016, on both the first page and on the pop-out box. Boggs Am. Decl. ¶ 11 [#33-1].

---

[9] UberX is a version of Uber that connects riders with drivers in more "cost-effective" vehicles. Boggs Decl. ¶ 8 [#13].

Drivers had the option to opt out of the arbitration agreement within 30 days of registering by sending an email or letter to Uber. Id. at ¶ 15.3(viii) [#33-1]. Capriole did not opt out. Boggs Am. Decl. ¶ 12 [#33-1].

As part of his work, Capriole brought passengers to and from Logan Airport in Boston. Capriole Decl. ¶ 6 [#16-8]. He also drove passengers over state lines into New Hampshire, Rhode Island, and Maine. Id. ¶ 7.

III.   Motion to Transfer Venue [#12]

Defendants argue that Capriole's agreement to a forum selection clause requires that this case be transferred to the Northern District of California. Defs' Mot. to Transfer Venue 2 [#12] (citing Ex. 1 at § 15.1 (Boggs Am. Decl.)) [#33-1]).[10] Plaintiff responds that: 1) Capriole's statutory claims are not covered by the forum selection clause and therefore transfer, if considered at all, should be governed solely by factors under 28 U.S.C. § 1404(a); 2) transfer is not warranted under the 1404(a) factors, including public interest factors; 3) the forum selection clause is not enforceable because it was not reasonably communicated; and 4) extraordinary circumstances exist that disfavor transfer. Pl.'s Opp'n to Mot. to Transfer Venue 3-10 [#15]. For the reasons that follow, the court finds that Capriole's action is subject to transfer.

   A. Plaintiff Entered into an Agreement that Contains an Enforceable Forum Selection
      Clause Covering the Plaintiff's Claims Under Massachusetts Wage Act

Under Massachusetts law, a forum selection clause is enforceable if it was "reasonably communicated and accepted." Ajemian v. Yahoo!, Inc., 83 Mass. App. Ct. 565, 573 (2013). For online agreements, courts must consider "the language that was used to notify users that the

---

[10] Defendants also assert that transfer is warranted because Plaintiff's counsel has a parallel case currently pending in the Northern District of California, Colopy v. Uber Techs. Inc., Civ. A. No. 3:19-CV-06462-EMC, and therefore transfer would "promote administrative efficiency." Defs' Mot. to Transfer Venue 1 [#12].

7

terms of their arrangement with [the company] could be found by following the link, how prominently displayed the link was, and any other information that would bear on the reasonableness of communicating [the terms]." Id. at 575. "Clickwrap" agreements, where a user checks or clicks a box to agree to contractual terms are generally enforced. Wickberg v. Lyft, Inc., 356 F.Supp. 3d 179, 183 (D. Mass. 2018).

In Cullinane, the First Circuit held that Uber's arbitration agreement – an iteration applicable to customer users of the App – was not reasonably communicated to and accepted by customers and therefore, those customers were not bound by the arbitration agreement. Cullinane v. Uber Techs., Inc., 893 F.3d 53, 62-64 (1st Cir. 2018). See also Theodore v. Uber Techs., Inc., 2020 WL 1027917 at *3-4 (D. Mass. Mar. 3, 2020) (finding, based on Cullinane, that plaintiff was not bound by Uber's arbitration agreement).

Applying Ajemian, the Cullinane court considered whether the online agreement provided "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms." 893 F.3d at 62 (quoting Ajemian, 83 Mass. App. Ct. at 574). The court first noted that Uber's agreement did not require users to click a button to accept the terms, but instead allowed for acceptance through a "notice of deemed acquiescence." Id. The court also noted other general methods that internet companies use to make terms conspicuous to users, including "using larger and contrasting font, the use of headings in capitals, or somehow setting off the term from the surrounding text by the use of symbols or other marks," id., and noted that Uber did not follow these procedures. Id. at 63. Based on these facts, the court determined that Uber's agreement was not reasonably communicated and agreed upon, and therefore was unenforceable. Id. at 62.

Capriole argues that Uber's agreement as presented to drivers in 2016 is substantially similar to the agreement in Cullinane. However, critical differences exist. Here, when Capriole first signed up for the Uber App and logged on, he was presented a screen that instructed him that "TO GO ONLINE, YOU MUST REVIEW ALL THE DOCUMENTS BELOW AND AGREE TO THE CONTRACTS BELOW." Boggs Am. Decl. ¶ 6 [#33-1]; Ex. 2 (Boggs Am. Decl.) [#33-1]. Below this instruction were hyperlinks to two documents, including the Agreement. Boggs Am. Decl. ¶ 6 [#33-1]. At the bottom of the page, in order to continue to use the App, Capriole had to click a large blue button that said "YES, I AGREE." Id. In response to clicking the button, a pop-out box was presented to Capriole reading "PLEASE CONFIRM THAT YOU HAVE REVIEWED ALL THE DOCUMENTS AND AGREE TO ALL THE NEW CONTRACTS" and Capriole had to choose between Yes I Agree and No. Id. ¶ 7. Uber has submitted evidence that Capriole clicked both buttons to agree to the Agreement on March 27, 2016, at 5:04 p.m. Id. ¶ 11.

Uber may have been better served by using a blue hyperlink for the Agreement as the First Circuit suggested in Cullinane. 893 F.3d at 63 ("Though not dispositive, the characteristics of the hyperlink raise concerns as to whether a reasonable user would have been aware that the gray rectangular box was actually a hyperlink"). However, the other aspects of how Uber communicated its Agreement to Capriole conform with First Circuit precedent and with Ajemian's definition of reasonable communication in the context of clickwrap agreements. See Bekele v. Lyft, Inc., 918 F.3d 181, 187 (1st Cir. 2019) ("The reasonable notice standard has governed online contracts across jurisdictions since the early days of the internet, and the inquiry has always been context and fact-specific."). Uber provided notice of the existence of the Agreement using capital letters, gave the opportunity to Capriole to read the Agreement prior to

assent, and did not allow Capriole to move forward with using the App until Capriole agreed, twice, that he had reviewed the Agreement and agreed to the contract. Furthermore, unlike in Cullinane where there was no opportunity for customers to affirmatively accept the agreement, Uber has provided proof that Capriole clicked to agree. Boggs Am. Decl. ¶ 11 [#33-1].

Therefore, following the aforementioned Massachusetts and First Circuit precedent, the Agreement was reasonably communicated to Capriole and he manifested his assent.

B. The Forum Selection Clause Covers the Disputes Here

"[I]t is the language of the forum-selection clause itself that determines which claims fall with its scope." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009). Here, the forum selection clause provides that "[a]ny disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services that are not subject to the arbitration clause contained in Section 15.3 shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California." Ex. 1 at § 15.1 (Boggs Am. Decl.) [#33-1].

Plaintiff contends his Wage Act claims "do not arise out of or in connection with Plaintiff's contract with Uber." Pl's Opp'n to Mot. to Transfer Venue 4 [#15]; see also id. at 6 n.3 (asserting statutory wage-and-hour claims do not "arise out of" a contract). Defendants respond that the language of the forum selection clause is sufficiently broad to encompass Plaintiff's Wage Act claims as they are claims "in connection to" Capriole's use of Uber Services. Defs' Reply in Support of Mot. to Transfer Venue 6-7 [#21].

"[C]ourts describe the phrase . . . 'in connection with' . . . to mean simply connected by reason of an established or discoverable relation." Huffington v. T.C. Group, LLC, 637 F.3d 18, 22 (1st Cir. 2011) (quoting Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001). "Uber Services" are defined in the contract as "Uber's on-demand lead

generation and related services licensed by Uber to Company that enable transportation providers to seek, receive and fulfill on-demand requests for transportation services by Users seeking transportation services." Ex. 1 at § 1.13 (Boggs Am. Decl.) [#33-1]. The forum selection clause thus covers disputes related to Capriole's use of the Uber App as a driver. Therefore, the forum selection clause reaches claims that are brought "in connection to" Capriole's relationship with Uber. Since Capriole asserts that he has been misclassified by Uber based on their relationship, the court concludes that the forum selection clause encompasses Capriole's claims.

The court notes that there is an additional dispute subject to the forum selection clause, namely, Plaintiff's contention that Uber drivers are transportation workers, and that the arbitration provision of the Agreement is not enforceable under the Federal Arbitration Act. Pl's Opp'n to Mot. To Transfer Venue 1 [#15]; Pl's Opp'n to Mot. to Compel Arbitration and to Stay Proceedings 6-12 [#16]. A court, rather than an arbitrator, must resolve that issue. See New Prime Inc. v. Oliveira, 139 S. Ct. 532, 538 (2019) ("a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration."). Under the forum selection clause, the determination of whether the arbitration provision is enforceable should be made in San Francisco, California.

C. Neither the Public Interest nor Extraordinary Circumstances Bar Transfer to Address the Motion to Compel Arbitration

District courts should transfer a case, pursuant to a valid and enforceable forum selection clause upon a party's motion under 28 U.S.C. § 1404(a) unless "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 52 (2013). In evaluating a motion to transfer based on a forum selection clause, the court may give "no weight" to the plaintiff's choice of forum and no consideration to arguments about parties' private interests. Id. at 63-64.

Instead, the court "may consider arguments about public-interest factors only." Id. at 64. These include "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" Id. at 62, n.6 (quoting Piper Aircraft v. Reyno, 454 U.S. 235, 241 n.6 (1981)). Plaintiff bears the burden of showing that public interests "overwhelmingly disfavor a transfer." Id. at 67.

Although Plaintiff has not argued that court congestion or similar administrative matters would disfavor transfer, the court is reluctant to burden another District with a transferred case (particularly one with an emergency motion for a preliminary injunction pending) in light of the unprecedented staff shortages and delays throughout the courts as a result of the COVID-19 pandemic. The court also sees some efficiencies in resolving the issues here, where the court has recently resolved a motion to compel arbitration presenting similar legal issues, see Cunningham v. Lyft, Inc., No. 1:19-cv-11974-IT, 2020 WL 1323103 (D. Mass. Mar. 20, 2020), and briefing is almost complete in that case on a similar emergency motion for a preliminary injunction. Accordingly, this factor disfavors transfer to some degree.

Plaintiff argues against transfer in the interest of having localized controversies decided at home. Here, Plaintiff lives and works in Massachusetts, claims a violation of Massachusetts law, seeks to represent a class comprised only of Massachusetts workers, seeks injunctive relief that would apply to Massachusetts based workers, and argues that the public is harmed by Uber's alleged violations of the Wage Act. That the controversy is of local import is underscored by the recent filing of an amicus brief by the Attorney General for the Commonwealth, in which she contends that "misclassification remains particularly prevalent throughout the transportation sector, including for those based here in Massachusetts." Amicus Curiae Brief of the Mass.

12

Attorney General in Support of Pl's Emergency Motion for Preliminary Injunctive Relief 2 [#46]. Accordingly, this factor also disfavors transfer to some degree.

On "the interest in having the trial of a diversity case in a forum that is at home with the law," Plaintiff raises no argument, and the court knows of none as to why the Northern District of California would not be able to apply Massachusetts law as to arbitrability under Massachusetts law or with regard to the Wage Act Claims. This is also suggested by a case with similar facts, where the California court faithfully applied Massachusetts law when considering plaintiffs' classification claims brought under the Massachusetts Wage Act. Yucesoy v. Uber Techs., Inc., 109 F.Supp. 3d 1259, 1261-62, 1269-70 (N.D. Cal. 2015); see also Atencio v. TuneCore Inc., 2017 WL 10059254 at *3-4 (C.D. Cal. Aug. 17, 2017) (applying Massachusetts law when analyzing claim brought under the Massachusetts Wage Act). Thus, there is no indication that Capriole will not have his substantive rights protected under Massachusetts law if the case is transferred to the Northern District of California. Accordingly, this factor does not weigh against transfer.

In sum, while the court finds that the public interest disfavors transfer, it does not find that to be overwhelmingly so. That said, nothing in this Memorandum and Order would bar the judge in the Northern District of California (who will be better acquainted with the administrative matters in that District) from reconsidering the issue, and as appropriate, returning the matter to Massachusetts.

IV.     Impact on Plaintiff's Pending Appeal

The court considers the impact a transfer may have on Plaintiff's right to appellate review of the order denying Plaintiff's motion for injunctive relief. Mem. and Order [#41]; Notice of

Appeal [#51]. If the First Circuit finds the denial of a preliminary injunction to have been in error, a remand to correct that decision may be frustrated if the case has been transferred.

The court presumably could stay the action and transfer pending resolution of the appeal to safeguard Plaintiff's appellate rights here. However, a stay would prevent those aspects of the case not involved in the appeal from moving forward.

This conundrum can be resolved, however, as this court's Memorandum and Order [#41] was issued less than thirty days ago. The court sees no reason why Plaintiff could not file a timely Notice of Appeal of the Memorandum and Order [#41] to the Ninth Circuit.

V. Conclusion

Accordingly, for the aforementioned reasons, the court deems the forum selection clause to be valid and enforceable. Therefore, Defendants' Motion to Transfer Venue [#12] is ALLOWED and Defendants' Emergency Motion for a Stay of All Proceedings Pending Resolution of their Motion to Transfer [#53] is DENIED as moot. The court defers ruling on Plaintiff's Emergency Motion for Preliminary Injunction [#42] and Plaintiff's Motion for Leave to File Second Amended Complaint [#43]. The clerk shall transfer this action to the United States District Court for the Northern District of California.

IT IS SO ORDERED.

Date: March 31, 2020 /s/ Indira Talwani
United States District Judge